## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

### CASE NO:

RICHARD HENDERSON, individually and
on behalf of all others similarly situated,

      Plaintiff,

      v.

ALPINE DIGITAL GROUP, INC.,
a Colorado corporation,

      Defendant.

_____/

### CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD HENDERSON (hereinafter "Plaintiff"), brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant, ALPINE DIGITAL GROUP, INC. ("ALPINE"), for its violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy.  Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      Between approximately September 3, 2020 and continuing through the filing of this Complaint, Plaintiff and each Class member revoked their consent to receive text messages from Defendant by texting "STOP"[1] to Defendant.  Thereafter, Defendant sent or caused to be sent telemarketing text messages to Plaintiff and Class Members despite the clear revocation of consent that Plaintiff and each Class Member had expressed.  The instant action challenges all post-revocation text messages that were sent by Defendant to Plaintiff and Class Members from approximately September 3, 2020, through the date of filing this class action complaint.

3.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[2]  The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

4.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

5.      Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

---

1.      Or other written words reasonably evidencing an express revocation of consent.
2.      *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

6.     In enacting the TCPA, Congress intended to give consumers a choice as to how companies may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

> *Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of, and marketing decisions regarding, the unlawful and unwanted calls to Plaintiff from this District.

10.     Plaintiff resides in League City, Texas, where the subject text messages were received.

11.    The Court has personal jurisdiction over Defendant because it conducts business in this state, maintains principle places of business in this state, markets its services within this state, employs individuals in this state, and has availed itself to the jurisdiction of this state by placing calls to Plaintiff and Class Members from this state.

## PARTIES

12.    Plaintiff's domicile is in League City, Texas.

13.    Defendant, ALPINE, is a Colorado corporation, listing its principal address at 13856 W. 2nd Ave., Golden, Colorado, 80401. Defendant, ALPINE's registered agent in the state of Colorado is listed as Patrick Donaldson, 13856 W. 2nd Ave. Golden, Colorado, 80401.

14.    ALPINE is a national marketing company that promotes and markets its services throughout the country, and during the relevant time period, sent unsolicited marketing text messages to wireless telephone users in violation of the TPCA.

15.    Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

16.    At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

17.    Defendant is authorized to engage in business in the State of Colorado, and at all times mentioned herein was a corporation and "person," as defined by 47 U.S.C. § 153(39).

18.   At all times relevant Defendant conducted business in the State of Colorado, within this judicial district.

19.   ALPINE utilizes bulk text messaging, to send unsolicited text messages, including at least 6 unwanted post revocation text messages to Plaintiff alone beginning on August 20, 2020 and continuing through filing of this Complaint.

20.   ALPINE created, approved of, operated, and/or ratified the unsolicited text messages that are the subject of this lawsuit.

21.   Plaintiff registered his phone number ending in 2765 on the National Do Not Call Registry on or about May 13, 2010.

22.   On August 20, 2020, at approximately 7:21 p.m., Defendant sent or caused to be sent to Plaintiff a text message.

23.   The text message Defendant sent to Plaintiff contained the following message:

> **Cheryl, with less people driving in TX, companies don't want you to know this. 4dsm2v.com/721dab514f.**

24.   After receiving this text message, Plaintiff immediately replied "**STOP**" so that he would no longer receive unwanted text messages from ALPINE.

25.   Plaintiff expressly revoked consent to receive "mobile alert" text messages by sending an "opt-out" message to Defendant.  Plaintiff specifically followed the instructions that Defendant provided in its policies in order to revoke consent by texting "**STOP**" to Defendant on August 20, 2020.

26.   All text messages sent by Defendant or on behalf of Defendant to Plaintiff on or after August 20, 2020, were sent without his consent.

27.   Notwithstanding Plaintiff's opt-out reply on August 20, 2020, Defendant sent substantially similar automated text messages to Plaintiff at 9:53 a.m. on September 3, at 12:50

p.m. on September 14, at 4:28 p.m. on September 29, at 4:48 p.m. on September 29, at 5:03 p.m.

on September 29, and at 4:48 p.m. on October 1.

28.    Upon receipt of each of these unauthorized text messages Plaintiff immediately replied

"**STOP**."

29.    Below is a copy of the text message that Defendant sent to Plaintiff on August 20, 2020,

and the **"STOP"** reply sent from Plaintiff:



30.    Below is a copy of the text message that Defendant sent to Plaintiff on September 3,

2020, and the **"STOP"** reply sent from Plaintiff:



31.   On at least seven (7) occasions Plaintiff replied "**<u>STOP</u>**" to Defendant's unauthorized text messages.

32.   "STOP" is universally recognized by mobile message senders as an express revocation of consent to receive text messages.

33.   Plaintiff did not want to receive these text messages and followed Defendant's opt-out directions after receiving these unwanted text messages, but Defendant nevertheless continued to send the text messages to Plaintiff.

34.   As demonstrated by the sampling of these text messages provided above, ALPINE continued to send Plaintiff text messages despite Plaintiff replying to several texts from Defendant with "STOP."

35.    Through the unsolicited messages, Defendant contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

36.    Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

37.    Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

38.    Upon information and belief, Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

39.    The impersonal and generic nature of the text messages, along with the fact that Defendant utilized a short code for the text messages that Defendant sent to Plaintiff further demonstrates that Defendant used an ATDS to send the subject messages.

40.    The fact that "STOP" messages revoking consent were sent to Defendant's system without any human seeing or responding to those messages, and that unconsented to blast texts were automatically and continually sent after being told to "STOP," further demonstrates that Defendant used an ATDS to send the subject text message.

41.    Defendant sent the subject text messages *en masse* to Plaintiff and Class Members using an autodial function regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

42.    The content of the text messages made to Plaintiff and the Class Members show that they were for marketing purposes and thus required Plaintiff's prior express written consent.

43.    The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. 227(b)(1).

44.    These text messages constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45.    Plaintiff did not provide Defendants or their agents prior consent to receive these messages to his cellular telephone; therefore, the unsolicited messages violated 47 U.S.C. § 227(b)(1).

46.    Defendant is and was aware that it was transmitting unsolicited text messages to Plaintiff and other consumers without their prior express consent.

47.    Defendant is and was aware that it was placing unsolicited robocalls to Plaintiff and other consumers without their prior consent.

48.    Plaintiff was damaged by Defendants' messages. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted messages at all hours of the day (including 3 in one day alone), forcing him to divert attention away sleep and causing disruption to his work, personal time, and other activities. Not only did the receipt of the text messages distract Plaintiff away from his personal activity, Plaintiff was forced to spend time investigating the calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes").

49.    In order to investigate the companies who were responsible for the unwanted, illegal and unauthorized calls to Plaintiff's personal cell phone, Plaintiff visited the link advertised within the unauthorized text messages which took Plaintiff to www.selectmypolicy.com.  From there,

Plaintiff learned that Defendant, ALPINE, was identified as the owner of www.selectmypolicy.com.

## **CLASS ACTION ALLEGATIONS**

50.    Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and of a similarly situated "Class" or "Class Members" defined as:

> **Revocation Class:**  All persons within the United States who, between August 20, 2020 and the date of class certification, sent a "STOP"[3] message to ALPINE unsubscribing  from receiving text messages from ALPINE  and who were subsequently sent marketing text messages from Defendant to their cellular telephone contrary to their instructions and did not re-subscribe to receive text messages.

> **Do Not Call Registry Class:**  All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of ALPINE; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling ALPINE's products and services; and (5) for whom ALPINE claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as ALPINE claims it supposedly obtained prior express written consent to call the Plaintiff.

51.    Excluded from the Class are Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or their subsidiaries or affiliates, and members of the federal judiciary.

52.    This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

---

[3].    Or other words evidencing express revocation of consent, including but not limited to "cancel" or "unsubscribe."

Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

53. **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized SPAM campaign calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

54. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and personnel records.

55. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

56. **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether, between July 23, 2020, and the filing of this complaint, Defendant or its agents called (other than a message made for emergency purposes or made with the

prior consent of the called party) to a Class member using any automatic dialing to any telephone number assigned to a cellular phone service;

b.  How Defendant obtained the numbers of Plaintiff and Class members;

c.  Whether the dialing system used to call is an Automatic Telephone Dialing System;

d.  Whether Defendant engaged in sending informational content when it sent the text messages which are the subject of this lawsuit;

e.  Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

f.  Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

g.  Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

h.  Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

i.  Whether Plaintiff and the Class are entitled to any other relief.

57.   One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

58.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

59.   Plaintiff and members of the Class each received at least one SPAM text message, providing informational content, which Defendant placed or caused to be placed to Plaintiff and the members of the Class.

60.   **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

61.   **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff

knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

62. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

**COUNT I**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227(b)**
(Revocation Class)

63. Plaintiff incorporates by reference all of the allegations contained in all of the above paragraphs 1 through 62 of this Complaint as though fully stated herein.

64. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

65. Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

66. Defendant—or third parties directed by Defendant—used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without

human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

67.    These calls were made without regard to whether or not Defendant had first obtained permission from the called party to make such calls. In fact, Defendant did not have prior consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

68.    Defendant has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior consent.

69.    The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

70.    As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

71.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

72.    Defendant knew that it did not have prior consent to make these calls and knew or should have known that its conduct violated the TCPA.

73.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to Section 227(b)(3)(C).

74.   As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

75.   Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, ALPINE DIGITAL GROUP, INC., as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227**
**(Do Not Call Registry Class)**

76.   Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 62 of this Complaint as though fully stated herein.

77.   The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

78.   47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

79.   47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

80.   Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

81.   Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

82.   Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.   To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, ALPINE DIGITAL GROUP, INC., as set forth in the Prayer for Relief below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant for:

a.  An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class counsel;

b.  Statutory damages of $500 per call in violation of the TCPA;

c.  Willful damages at $1,500 per call in violation of the TCPA;

d.  A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e.  An injunction prohibiting Defendants from using an automatic telephone dialing system to call numbers assigned to cellular telephones without the prior express written consent of the called party;

f.  Reasonable attorney's fees and costs; and

g.  Such further and other relief as this Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff, RICHARD HENDERSON, demands a trial by jury on all appropriate claims.

**Dated this 9ᵗʰ day of December 2020.**          Respectfully Submitted,


**EGGNATZ | PASCUCCI**                      **JORDAN RICHARDS, PLLC**
7450 Griffin Road, Suite 230                805 East Broward Blvd. Suite 301
Davie, Florida 33314                        Fort Lauderdale, Florida 33301
Tel: (954) 889-3359                         Tel: (954) 871-0050
*Counsel for Plaintiff*                     *Counsel for Plaintiff*


By: */s/ Joshua H. Eggnatz*                 By: */s/ Jordan Richards*
JOSHUA H. EGGNATZ, ESQUIRE                  JORDAN RICHARDS, ESQUIRE
Florida Bar No. 0067926                     Florida Bar No. 108372
MICHAEL PASCUCCI, ESQUIRE                   Jordan@jordanrichardspllc.com
Florida Bar No. 83397                       Melissa@jordanrichardspllc.com
jeggnatz@justiceearned.com                  Jake@jordanrichardspllc.com
mpascucci@justiceearned.com

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on December

9, 2020.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

**<u>SERVICE LIST:</u>**